UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PAUL MICHAEL CAPE,

    Plaintiff,

    v.

ST. JOSEPH CAUTY JAIL, et al.,

    Defendants.

CAUSE NO. 3:21-CV-693-JD-MGG

### OPINION AND ORDER

Paul Michael Cape, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Cape alleges that his treatment at the St. Joseph County Jail has worsened since he filed several lawsuits in September 2021. He tried to purchase a pen from commissary and his request was denied. Other inmates tried to order a pen for Cape, but an officer denied the request when he learned the pen was for Cape. Cape believes that his request to purchase a pen was denied in order to prevent him from filing more lawsuits.

Cape also notes that someone employed with Inmate Services told the inmates that there is a $350 fee for filing a lawsuit. He believes this is untrue, and that inmates are told this to discourage them from filing lawsuits. Similarly, someone from Inmate Services asked Cape to stop telling other inmates how to file lawsuits.

Additionally, on September 9, 2021, Cape's knee hurt, and he asked for ibuprofen at noon. He was told that medical would be around to give him ibuprofen around 3:00 p.m. At 4:00 p.m. he still had not received any ibuprofen, so he asked again. He was told that he would not receive the medication until night pass (between 7:00 p.m. and 2:00 a.m.). He had to wait a total of eight hours for the ibuprofen. He believes that this too is retaliation.

He seeks discipline or termination of those responsible, ten million dollars for his pain and suffering, and changes to prevent future retaliation. He has sued the St. Joseph County Jail, the Sheriff of St. Joseph County, and the City of South Bend.

As an initial matter, Cape cannot sue the St. Joseph County Jail because it is a building. It is not a suable entity. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

Cape also sued the City of South Bend, but he does not mention the City of South Bend in the body of the complaint at all. Additionally, it is unclear how the City of South Bend could be liable for alleged retaliation against Cape while incarcerated at the St. Joseph County Jail.

Cape sued the Sheriff of St. Joseph County Jail, but his complaint does not suggest that the sheriff was personally involved in any of the alleged retaliation.

"[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. The doctrine of *respondeat superior*, which allows an employer to be held liable for subordinates' actions in some types of cases, has no application to § 1983 actions. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993).

Even if Cape had sued a defendant who was personally involved in the alleged retaliation, his allegations do not state a claim. To prevail on a First Amendment retaliation claim, [Cape] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here, Cape has engaged in activity protected by the First Amendment. However, he has not alleged any deprivation that is likely to deter future First Amendment activity.

When assessing whether a deprivation is likely to deter future First Amendment activity, the court must consider the deprivation objectively, from the perspective of a person of ordinary firmness, not from Cape's subjective point of view. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). "There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Thus, while the determination of whether an alleged deprivation is sufficiently severe

3

to deter a person of future First Amendment activity is generally a question of fact, the question can be determined as a matter of law when the alleged injury is minimal. *Douglas*, 964 F.3d at 647.

Having his request to purchase a pen (or the requests of other inmates to purchase a pen on his behalf) denied is not the kind of deprivation that would deter a person of ordinary firmness from engaging in future First Amendment activity. Neither would being correctly educated on the cost of filing a civil lawsuit.[1] Likewise, being told to stop telling inmates how to file lawsuits is not the kind of deprivation that would likely deter future First Amendment Activity. Finally, although denying or delaying medical care is the type of deprivation that could deter future First Amendment activity, *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015), the alleged harm from an eight-hour delay in receiving over-the-counter pain medication is so minimal that it would not likely deter future First Amendment activity. *See Gully v. Hundley*, No. 18-CV-539-NJR, 2020 WL 1503577, at *5 (S.D. Ill. Mar. 30, 2020), *appeal dismissed*, No. 20-1709, 2020 WL 9423905 (7th Cir. Dec. 14, 2020) (noting in dicta that a delay of up to sixty minutes to get an inmate to the medical department for a breathing treatment was not

---

[1] All prisoners are subject to the requirements of 28 U.S.C. § 1915(b) and must pay the entire filing fee either up front or over time, in accordance with the procedures set forth in that statute. *See* 28 U.S.C. § 1915(b); *Hains v. Washington*, 131 F.3d 1248, 1250 (7th Cir. 1997). The court does not have authority to waive the fee or to modify the amount or timing of payments. *Lucien v. DeTella*, 141 F.3d 773, 776 (7th Cir. 1998); *see also Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997).

sufficient to deter a person of ordinary firmness from future First Amendment activity).²

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). Here, none of the alleged retaliatory acts are sufficiently serious to deter a person or ordinary firmness from participating in future First Amendment activity, and any attempt to amend would be futile.

For these reasons, this case is **DISMISSED** pursuant to 28 U.S.C. § 1915A.

SO ORDERED on September 28, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

² Additionally, Cape has not asserted facts from which it can be plausibly inferred that his First Amendment activity was a motivating factor in the decisions to deny Cape a pen, correctly educate him and other inmates on the cost of filing a civil lawsuit, ask him to stop telling inmates how to file lawsuits, or delay his receipt of ibuprofen on one occasion.